FILED

2010 DEC -8  PM 4:07

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHESTER RAY WISEMAN<br>CDCR #K-65722,<br><br>                    Plaintiff,<br><br>vs.<br><br>R. Hernandez, et al.,<br><br>                    Defendants. | Civil No. 08cv1272 LAB (NLS)<br><br>**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br><br>[Doc. No. 56.] |

## I. INTRODUCTION

Chester Ray Wiseman ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, has filed a prisoner civil rights Complaint pursuant to 42 U.S.C. § 1983, claiming Defendants denied him (1) access to the courts in violation of the First Amendment; and (2) outdoor exercise in violation of the Eighth Amendment while he was incarcerated at Richard J. Donovan Correctional Facility ("RJD"). Defendants R. Hernandez. (Warden), S. Garcia (Chief Deputy Warden),  S. Hubbard (Director of CDCR), D. McBride (Associate Warden), S. Moore (CDCR Associate Director), B. Morris

1  (Correctional Captain), K. Sterling (Librarian), and A. Warren (Correctional Officer) have filed a
2  Motion to Dismiss Plaintiff's Third Amendment Complaint ("TAC") pursuant to FED.R.CIV.P.
3  12(b)(6) [Doc. No. 56]. Plaintiff has filed an Opposition to which Defendants have filed a Reply.
4  [Doc. Nos. 59 & 60.] After careful consideration of the moving papers, all supporting documentation,
5  and the applicable law, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED**.

## II. PROCEDURAL BACKGROUND

Plaintiff filed his original Complaint on July 14, 2008, and a subsequent First Amended Complaint on October 27, 2008. [Doc. Nos. 1 & 8.] Defendants moved to dismiss the First Amended Complaint, but prior to adjudication of that motion, Plaintiff filed a request for leave to file a Second Amended Complaint. [Doc. No. 29.] The Court granted Plaintiff's Motion for Leave to file a Second Amended Complaint and denied without prejudice the Motion to Dismiss the First Amended Complaint. [Doc. No. 31.] On March 25, 2009, Defendants filed a Motion to Dismiss the Second Amended Complaint. [Doc. No. 35.] On April 10, 2009, Plaintiff filed an Opposition to the Motion to Dismiss. [Docket No. 37.] On May 28, 2009, Plaintiff filed a Motion for Summary Adjudication. [Doc. No. 40.] On July 6, 2009, Plaintiff filed a Motion to Defer the Motion for Summary Adjudication until after the Motion to Dismiss was resolved. [Doc. No. 45.]

On March 3, 2010, the District Court entered an Order dismissing Plaintiff's SAC, specifically the access-to-courts claim, without prejudice and with leave to amend, and dismissing Plaintiff's denial of exercise claim, with leave to amend to show that Plaintiff had in fact exhausted his administrative remedies. [Doc. No. 50 at 10.]

On May 7, 2010 Plaintiff filed his TAC based on events that occurred while he was housed in the Administrative Segregation Unit ("ASU") at RJD. (*See* TAC at 5.) Plaintiff alleges two causes of action in his TAC: (1) Defendants Warren, Morris, McBride, Sterling, Garcia, and Hernandez denied him access to the courts, and (2) Defendants Morris, McBride, Garcia, Hernandez, Moore, and Hubbard denied him access to outdoor activities for sixth months. (TAC at 12-13.)

In his Opposition to the Motion to Dismiss, Plaintiff withdraws all his allegations against Sterling. (Plaintiff's Opposition ("Opp.") at 2.) Plaintiff also moves to dismiss his access-to-courts claim against Garcia, Hernandez, Hubbard, McBride and Moore. In sum, Plaintiff's Complaint now

contains his First Amendment claim against Morris and Warren, and his Eighth Amendment claim against Morris, McBride, Garcia, Hernandez, Moore and Hubbard.

### III. FACTUAL BACKGROUND

The Court must accept as true all material allegations in the amended Complaint and must construe the amended Complaint, and all reasonable inferences drawn from it, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 90, 895 (9th Cir. 2002).

**A.  Denial of Access to the Courts**

Plaintiff alleges the following. On March 10, 2008, correctional officers placed Plaintiff in ASU to ensure his safety. (TAC at 5.) Upon arrival in ASU, Plaintiff asked Sergeant Payne to give him his law books and legal papers, and to provide him with law library access in order to work on his pending litigation.[1] (*Id.*) Because Plaintiff did not have proof of pending litigation, Payne instructed Plaintiff to submit written requests to Sterling for library access and Warren for property access. (*Id.*) On March 12, 2008, Plaintiff submitted written requests to Sterling and Warren, but neither responded. (*Id.*)

On March 17, 2008, Plaintiff appeared by telephone before California Superior Court Judge Brian C. Yep regarding case no. MC018554. (*Id.*) Judge Yep ordered Plaintiff to serve all of the defendants in that action a copy of the summons, complaint, exhibits and acknowledgment of receipt of summons. (*Id.*) Judge Yep scheduled a hearing for April 28, 2008, to dismiss any unserved defendants. (*Id.*) After the hearing, Plaintiff informed Payne of Judge Yep's Order and requested his legal materials. (*Id.* at 6) Payne told Plaintiff he would talk to Warren. (*Id.*)

On April 3, 2008, Plaintiff appeared by telephone before Superior Court Judge Carlos P. Baker regarding case no. 07C03491. (*Id.*) Judge Baker ordered Plaintiff to serve a summons and complaint on the defendant in that action. (*Id.*) Judge Baker also ordered Plaintiff to submit case citations referenced in the pending motion to the court within seven days. (*Id.*) Following the hearing, Payne ordered Warren to issue Plaintiff with all of this legal materials. (*Id.*) However, the next day Warren only issued a portion of Plaintiff's legal materials; he did not issue Plaintiff's materials relating to case

---

[1] Plaintiff had filed two actions in 2007 arising from his incarceration at California State Prison - Los Angeles County.

3

no. MC018554. (*Id.*) When Plaintiff objected to the incomplete issuance, Warren replied "that's your problem, I gave you your legal property." (*Id.*)

On April 28, 2008, Plaintiff informed Morris that he had a scheduled telephonic court appearance for case no. MC018554 that day. (*Id.*) Morris informed Plaintiff that the ASU staff had determined that Plaintiff could not have telephone access. (*Id.*) Judge Yep dismissed case no. MC018554 because Plaintiff failed to appear at the telephonic appearance and had failed to serve the defendants in that action. (*Id.*)

On May 5, 2008, Plaintiff spoke to Morris about his difficulties regarding access to the law library, his legal materials, and the prison telephone. (*Id.*) Morris suggested that if Plaintiff accepted a cellmate, then he could have access to everything he needed. (*Id.*) Plaintiff told Morris that his constitutional rights were not contingent upon him accepting a cellmate. (*Id.*)

The next day, Plaintiff filed an inmate appeal alleging misconduct against Warren for failing to issue him his legal property. (*Id.* at 8) Warren explained to Plaintiff that access to the property room was presently impossible because the room was being refitted to protect against rodents. (*Id.*) Plaintiff informed Warren that his case, case no. MC018554, had been dismissed because Warren had denied him the papers he needed. (*Id.*) Warren then replied, "in that case, you don't need your legal property." (*Id.*)

On May 9, 2008, Plaintiff again engaged Morris in a discussion about his difficulties in obtaining access to the phone, library, and his legal property. (*Id.*) Morris again suggested that any discussion of future access to the phone, library, or legal property, was contingent on Plaintiff accepting a cellmate. (*Id.*)

On May 12, 2008, Plaintiff filed another inmate appeal this time alleging misconduct by Morris for denying him access to the library and his legal materials unless he accepted a cellmate. (*Id.*) The inmate appeals office refused to process the appeal because the office was already processing another appeal regarding Plaintiff's library access. (*Id.*) Three days later, Senior Librarian Van Cleave interviewed Plaintiff about an April 15, 2008, appeal against Librarian Sterling. (*Id.*) Van Cleave acknowledged that Sterling failed to allow Plaintiff library access. (*Id.* at 9). Van Cleave then granted the appeal and assured Plaintiff he would be granted library access. (*Id.*)

On June 3, 2008, Plaintiff appeared by telephone before Judge Baker in case no. 07C03491. (*Id.*) Judge Baker ordered RJD to provide Plaintiff with direct library access or trained, skilled legal assistance. (*Id.*) Judge Baker also ordered RJD to provide Plaintiff with all allowable legal property. (*Id.*)

On June 13, 2008, Plaintiff submitted a letter to Hernandez regarding the continuous denial of library access and legal property, and Morris' use of the denial of access as punishment for Plaintiff's refusal to accept a cellmate. (*Id.*) Plaintiff attached copies of letters he had sent to Garcia and McBride, which had gone unanswered.[2] (*Id.*)

On July 11, 2008, McBride responded to Plaintiff's letter to Hernandez regarding the actions of Morris. (*Id.*) McBride's written response, states in part, "it appears Captain Morris was enforcing the policies at the Richard J. Donovan Correctional Facility," and that, "it has been determined that Captain Morris was not abusing his authority but was enforcing the policies of the RJDCF." (*Id.*) The RJD staff took no further action. (*Id.* at 10)

### B.  Denial of Outdoor Exercise

After moving from RJD's general population into the ASU, the RJD Classification Committee placed Plaintiff on "walk alone" yard status on March 10, 2008. (TAC at 10.) However, the ASU staff did not allow Plaintiff yard exercise because Plaintiff was in an overflow unit, and overflow inmates do not "receive yard." (*Id.*) On April 15, 2008, Payne informed Plaintiff that Plaintiff could have yard access if he took a cellmate and move into another ASU unit. (*Id.*)

On May 9, 2008, Plaintiff spoke to Morris about the yard access issue. (*Id.*) Morris told Plaintiff, "there is no yard for Ad-Seg overflow inmates until they accept a cellmate and move to a regular Ad-Seg building." (*Id.*) Plaintiff told Morris that outdoor exercise for inmates in segregation is a constitutional right that cannot be withheld as punishment for any rules violation. (*Id.*) Morris replied, "that's the policy here." (*Id.*) Plaintiff and Morris engaged in a similar discourse on June 30, 2008. (*Id.*)

On July 12, 2008, Plaintiff prepared and submitted a CDCR Form 7362 (Request for

---

[2] The Court notes that the Plaintiff does not state the substance of the letters he submitted to Garcia or McBride, nor the date of submission.

Healthcare Services), specifically requesting care for headaches, muscle cramps, eye socket pain, stress, anxiety, and depression.³ (*Id.* at 11)

On July 14, 2008, Plaintiff submitted letters to McBride, Garcia, and Hernandez, addressing the issue of continuous deprivation of outdoor exercise pursuant to Morris' enforcement of an unwritten policy which denies yard access to inmates that refuse cellmates. (*Id.*) Plaintiff did not receive a response. (*Id.*)

On August 17, 2008, Plaintiff submitted a letter and complaint to the CDCR Secretary addressing the deprivation of outdoor exercise, the actions of Morris, and the failure of McBride, Garcia, and Hernandez, to take corrective action. (*Id.*)

On September 8, 2008, Moore responded to Plaintiff's August 17, 2008, letter and complaint, stating, "RJD realizes the need for additional yard space in these unforeseen overflow units and is currently in the process of building additional yard areas to accommodate inmate yard access needs within the ASU." (*Id.*) Hubbard received a copy of Moore's letter. (*Id.*) Plaintiff never received outdoor yard access. (*Id.*) On September 18, 2008, Plaintiff was transferred to Kern Valley State Prison. (*Id.*)

## IV. DISCUSSION

Defendants claim: (1) they are protected by immunity under the Eleventh Amendment in their official capacities; (2) Plaintiff has failed to exhaust administrative remedies as to both claims; (3) Plaintiff has failed to state a First Amendment claim of denial of access to the courts; (4) Plaintiff has failed to establish a causal connection between the Defendants and the alleged denial of access to the courts; (5) Defendants are protected by qualified immunity from damages in their individual capacities. (Doc. No. 56 at 2.)

A.  **Standard of Review**

(1) **Rule 12(b)(6)**

Defendants move to dismiss the TAC under Federal Rule of Civil Procedure 12(b)(6).⁴ A

---

³ Plaintiff does not explicitly connect his need for treatment to the deprivation of yard exercise. However, the Court will assume that Plaintiff intended to present such a connection.

⁴ Unless otherwise noted, all future references to "Rule(s)" reference the Federal Rules of Civil Procedure.

1  motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see* Fed. R. Civ. P. 12(b)(6). Rule 8 sets forth the standards for a proper complaint; a Plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding such a motion, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Only factual allegations, and not legal conclusions, are entitled to be accepted as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Supreme Court recently addressed the standards for a motion to dismiss under Rule 12. A plaintiff cannot survive a motion to dismiss by mere legal conclusions. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do' . . . . The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court then found "[w]here there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 570). The plausibility standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotations omitted).

### (2) Pro se Litigants

When the plaintiff is appearing *pro se*, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *See Thompson v. Davis*, 295 F.3d 890, 895 (2002) (*pro se* pleadings construed liberally). This rule of liberal construction is "particularly important" in civil

1  rights cases. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation
2  to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of
3  the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268
4  (9th Cir. 1982). At a minimum, the *pro se* plaintiff "must allege with at least some degree of
5  particularity overt acts which defendants engaged in that support [his] claim." *Jones v. Community
6  Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

7  **B.    *Eleventh Amendment***

8        The Eleventh Amendment prohibits damage actions against state officials acting in their
9  official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989). It does
10 not, however, bar actions against state officers in their official capacities if [] plaintiffs seek only a
11 declaratory judgment or injunctive relief. *See Hafer v. Melo*, 502 U.S. 21, 30 (1991). Nor does the
12 Eleventh Amendment bar damage actions against state officials in their personal capacities. *See id.*
13 The Eleventh Amendment prohibits only damage actions against the "official's office;" actions that
14 are in reality suits against the state itself rather than against its individual officials. *See id.* at 26;
15 *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

16       Here, Plaintiff seeks nominal, compensatory and punitive damages. To the extent that these
17 are claimed against Defendants in their official capacities, the Court **RECOMMENDS** Defendants'
18 Motion to Dismiss be **GRANTED**.

19 **C.    *Failure to Exhaust***

20       The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) and provides that
21 "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner
22 confined in any jail, prison or other correctional facility until such administrative remedies as are
23 available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court,
24 exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 532
25 (2002).

26       The State of California provides its prisoners and parolees the right to administratively appeal
27 "any departmental decision, action, condition or policy perceived by those individuals as adversely
28 affecting their welfare." CAL. CODE REGS., tit. 15 § 3084.1(a). In order to exhaust available
administrative remedies within this system, a prisoner must proceed through several levels:

1  (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level
2  appeal to the institution head or designee, and (4) third level appeal to the Director of the California
3  Department of Corrections. *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing CAL.
4  CODE REGS. tit. 15 § 3084.5). The third or "Director's Level" of review "shall be final and exhausts
5  all administrative remedies available in the Department [of Corrections.]" *See* Cal. Dep't of
6  Corrections Operations Manual, § 54100.11, "Levels of Review;" *Barry*, 985 F. Supp. at 1237-38;
7  *Irvin v. Zamora*, 161 F. Supp. 2d 1125, 1129 (S.D. Cal. 2001).
8        Exhaustion is a prerequisite to bringing suit under the Prison Litigation Reform Act ("PLRA").
9  42 U.S.C. § 1997e(a); *Porter*, 534 U.S. at 524; *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005).
10 Non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative
11 defense which defendant prison officials have the burden of raising and proving. *Wyatt v. Terhune*,
12 315 F.3d 1108, 1119 (9th Cir. 2003). The plaintiff must be provided an opportunity to develop a record
13 to refute defendants' prima facie showing of non-exhaustion. *Id.* at 1120 n.14. On a motion to
14 dismiss, the court may look at both parties' submissions outside the pleadings to resolve factual issues
15 regarding exhaustion. *Id.*
16       Here, Defendants argue that Plaintiff has failed to exhaust his administrative remedies with
17 regard to both claims. [Doc. no. 56-1 at 5]. Defendants have provided a declaration from D. Foston,
18 Chief of the Inmate Appeals Branch, stating that official records reflect that although Plaintiff
19 attempted to file several appeals between December 31, 2008 and January 8, 2009, none were accepted
20 for review and were instead rejected, withdrawn or cancelled and returned to Plaintiff. [Doc. No. 56;
21 Foston Decl. ¶ 9.] Additionally, Defendants have submitted the declaration of Appeals Coordinator,
22 E. Franklin, at RJD, stating that computerized records reflect Plaintiff did not file any appeals while
23 he was in the ASU. [Doc. No. 60; Franklin Decl. ¶¶ 11-12.]
24       In his Opposition, Plaintiff concedes his first level appeals were not reviewed and that he did
25 not submit any appeals for the third and final level of review. Instead, Plaintiff contends that he
26 received no responses to his appeals and therefore "had no more remedies available for him to
27 exhaust." (Opp. at 5.) However, the record demonstrates that Plaintiff was familiar with the
28 requirements of the administrative review process having submitted twelve "Director's Level" appeals

between 2001 and 2009, and additionally having sixteen appeals screened out for various flaws. [Foston Decl. Exh. A.] In his declaration, Franklin states that if appeals had come into his office, Plaintiff would have received some kind of response and that inmates are "never informed that no remedies are available before they have appealed to the third level of review...." [Franklin Decl. ¶¶ 16-17.] Several examples of such letters sent to Plaintiff are attached to Franklin's declaration. [*Id.*, Exh. A at 11-16.]

A plaintiff cannot exhaust his administrative remedies where the plaintiff does not even attempt to submit an appeal to the third or "Director's Level" of review. *See* Cal. Dep't of Corrections Operations Manual, § 54100.11, "Levels of Review;" *Barry*, 985 F. Supp. at 1237-38; *Irvin*, 161 F. Supp. 2d at 1129. Because Plaintiff does not offer any evidence or argument that he even attempted to submit a "Director's Level" appeal he has failed to exhaust his administrative remedies as to both his denial of access and denial of outdoor exercise claims.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss based on lack of exhaustion be **GRANTED**.

**B.     *Denial of Access***

Even assuming Plaintiff successfully exhausted his administrative remedies, Plaintiff's denial of access claim nevertheless fails because his TAC does not allege the necessary elements of a denial of access claim such that it would lead to a reasonable inference of liability on Defendants' part.

Inmates have a right of access to the courts under the First and Fourteenth Amendments to the Constitution. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Prison officials who deliberately interfere with the transmission of a prisoner's legal papers, or deny him access to a legitimate means to petition for redress for the purpose of thwarting his litigation may violate the prisoner's constitutionally protected right to access to the court. *Lewis*, 518 U.S. at 351-55; *Vandelft v. Moses*, 31 F.3d 794, 796 (9th Cir. 1994).

In order to state a claim for denial of access to the courts, a plaintiff must allege a specific actual injury involving a nonfrivolous legal claim, *Lewis*, 518 U.S. at 351-55, and must allege facts showing that he "could not present a claim to the courts because of the [Defendants'] failure to fulfill [their] constitutional obligations." *Allen v. Sakai*, 48 F.3d 1082, 1091 (9th Cir. 1994). There are two

1  types of access-to-court claims: backward-looking and forward-looking. *See Christopher v. Harbury*,
2  536 U.S. 403, 413-14 (2002). A backward-looking claim concerns a lost opportunity to litigate,
3  whereas a forward-looking claim concerns "official action [that] is presently denying an opportunity
4  to litigate for a class of potential plaintiffs." *Id.* at 413. Plaintiff's cause of action looks backward
5  because Plaintiff alleges that he lost the opportunity to litigate case no. MC018854 due to Defendants'
6  actions. (TAC 12.) To adequately plead a backward-looking denial of access claim, Plaintiff must
7  allege three elements:1) the loss of a nonfrivolous or arguable underlying claim; 2) the official acts
8  frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise
9  available in a future suit. *Christopher*, 536 U.S. at 413-15.

10  Even if the Court were to assume that official acts frustrated Plaintiff's litigation of case no.
11  MC018854, he has failed to demonstrate that this underlying case is non-frivolous or that any remedy
12  is only available in this suit. To succeed on the first element, a plaintiff need not show that he would
13  have been successful on the merits of his claim, but only that they were not frivolous. *Allen*, 48 F.3d
14  at 1085 & n. 12. Here, Plaintiff's TAC offers no argument or facts to support a claim that case no.
15  MC018854 was not frivolous. Rather, Plaintiff argues in his Opposition to the Defendants' Motion
16  to Dismiss that the underlying case is not frivolous on its face. (Doc. 59 at 6.) Plaintiff offers no
17  authority for his proposition and this Court can find none. Indeed, courts base their determinations
18  of the frivolity of complaints and claims on the substance of the claim, including its factual and legal
19  basis. *See Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9 th Cir. 1984). Here, Plaintiff has failed to
20  provide any factual or legal basis for his underlying claim and therefore has failed to meet the first
21  element of the backward-looking denial of access pleading standard.

22  Similarly, Plaintiff has also failed to meet the third element of the pleading standard; a remedy
23  not otherwise available in a future suit. A plaintiff satisfies this element by demonstrating that he has
24  no remedy by which he can obtain relief other than the one requested in his denial of access suit.
25  *Christopher*, 536 U.S. at 413-14. Here, Plaintiff's underlying case was dismissed for failure to serve
26  the defendants and failure to appear at a court hearing. (TAC at 7.) However, Plaintiff does not allege,
27  and there is no evidence to suggest, that Plaintiff has forever lost the ability to appeal his habeas corpus
28  denial or that Plaintiff is not currently litigating the underlying case. *See Logan v. Doe*, 2007 WL

114707 at *9 (E.D. Cal. Apr. 18, 2007).

Finally, Plaintiff has also failed to allege sufficient facts to show that the Defendants' actions impeded him from presenting a claim to the courts. Indeed, the factual allegations in Plaintiff's complaint belie the plausibility of his present action. For example, during the four month period (March 10, 2008 to July 11, 2008) that Plaintiff alleges he was generally denied access, Plaintiff appeared via telephone three times before State Court Judges; once before Judge Yep, and twice before Judge Baker. (TAC at 5-9.) Also, during the first month of the four month period, Defendants issued Plaintiff his legal property[5] and took Plaintiff to the law library. (*Id.*) Plaintiff filed his initial Complaint in this case on July 14, 2008, just three days after the alleged period of denial of access. (TAC at 9.) Therefore, because of Plaintiff's admitted access to the state courts regarding two separate claims, his admitted access to the law library and issuance of his legal property, and his obvious ability to present claims to the federal court, this Court cannot find, at least on a general or systemic level, that the Defendants have denied Plaintiff access to the courts. *See Conway v. Oliver*, 429 F.2d 1307, 1308 (9th Cir. 1970) (plaintiff's ability to file papers within the court system reflected reasonable access to the courts).

Plaintiff's allegations of specific instances of denial of access also lack sufficient merit. Plaintiff specifically alleges that Defendant Morris denied him access to the telephone for a scheduled telephonic court appearance with Judge Yep on April 28, 2008, regarding case no. MC018854. (TAC at 7). Plaintiff further alleges that Defendant Warren did not issue him his legal materials regarding the same case. (TAC at 6). Plaintiff alleges that Judge Yep dismissed case no. MC018854 - a habeas corpus petition - because Plaintiff failed to appear at the telephonic hearing and failed to serve the defendants in that case. (TAC at 7). However, Plaintiff has not shown precisely how either Defendants' actions barred his access to the courts. For example, Plaintiff does not allege what his legal materials consisted of and why he could not serve the defendants without those materials. Nor does Plaintiff allege that his action was dismissed with prejudice, or that he was barred from

---

[5] The Court notes that Plaintiff alleges Warren failed to issue him *all* of his legal property, but Plaintiff does not state what other legal property Warren denied him or why Plaintiff needed this property to prosecute his cases. (TAC at 6.) Also, Plaintiff mentions case no. 07C03491 throughout his TAC. However, Plaintiff does not specifically allege that the Defendants denied him access to his files regarding this case. To the contrary, Plaintiff admits that Defendant Warren issued him these specific legal materials in advance of any court deadlines cited in the TAC. (TAC at 6.)

requesting an extension to serve or appear.

Plaintiff also appears to allege a third reason for his denial of access claim - "complete denial of library access, resulting in federal habeas appeal being dismissed." (TAC at 4.) Plaintiff's statement appears in a section of the TAC describing case no. MC018554 which he describes as a state tort action. *Id.* at 4. It is unclear whether the federal habeas appeal *is* the underlying case (case no. MC018554), or if the underlying case is *itself* a denial of access to the courts claim. If the latter is true Plaintiff has failed to demonstrate that both the first denial of access claim and the habeas appeal that came before it were non-frivolous and that no other remedy exists as to either action. In either case, Plaintiff's history of court filings demonstrates his obvious ability to present claims to the courts and undermines his contention that he has been denied meaningful access.[6]

Thus, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss Plaintiff's access to courts claim pursuant to FED.R.CIV.P. 12(b)(6).

### E. *Qualified Immunity*

Defendants also seek qualified immunity with respect to Plaintiff's denial of access claim. Because the Court has found that Plaintiff has not adequately stated an access to courts claim, the Court need not reach any issues regarding qualified immunity. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

## V. CONCLUSION

For the above reasons, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as follows:

1. Plaintiff's request to withdraw his allegations against Sterling, and his Eighth Amendment allegations against Garcia, Hernandez, Hubbard, McBride and Moore be **GRANTED**.

2. Defendants' Motion to Dismiss Plaintiff's requests for monetary damages from

---

[6] The Court notes Plaintiff's TAC contained citations to four other cases, two state and two federal, filed by Plaintiff since 2007.

Defendants in their official capacities be **GRANTED**.

3. Defendants' Motion to Dismiss for failure to exhaust administrative remedies be **GRANTED**.

4. Defendants' Motion to Dismiss based on failure to state a claim be **GRANTED**.

This report and recommendation of the undersigned Magistrate Judge is submitted pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than *January 7, 2011* any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *January 17, 2011*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**DATED:** December 7, 2010.

Honorable Nita L. Stormes
United States Magistrate Judge